CUSHMAN, The JEANNIE. See Cases Nos. 7,249 and 7,250.

## Case No. 3,515.
### CUSHMAN v. RYAN.
[1 Story, 91.][1]
Circuit Court, D. Massachusetts. May, 1840.

ADMIRALTY APPEALS—DISTURBING DAMAGES—AUTHORITY OF MASTER TO PUNISH SEAMAN — ASSAULT—PLEADING—ANSWER AS PROOF.

1. In cases of appeal, in admiralty proceedings, where damages are discretionary, the bur-

[1] [Reported by William W. Story, Esq.]

den of proof is on the appellant to show some clear mistake or error in the court below, either in awarding excessive damages, or in promulgating an incorrect rule of law, or to offer new and materially important testimony. which must go to the proof of the new allegations without contradicting the former evidence.

[Cited in Hutson v. Jordan, Case No. 6,959; Fuller v. Colby, Id. 5,149; The Busy, Id. 2,232; Lockwood v. The Grace Girdler, Id. 8,450; U. S. v. The Juniata, 93 U. S. 339; Lubker v. The A. H. Quinby, Case No. 8,-586; The Albany, 48 Fed. 565. Quoted in The Lord Derby, 17 Fed. 268.]

[See Bearse v. 340 Pigs of Copper, Case No. 1,193.]

2. Quere, whether a court of equity will enforce an assignment by a seaman of his expectant earnings.

3. No words of provocation will justify an assault, although they may constitute a ground for the reduction of damages.

[Distinguished in Fuller v. Colby, Case No. 5,149. Cited in Kiff v. Youmans, 86 N. Y. 330.]

4. Punishment inflicted by a master upon a seaman must be moderate in degree, both proportioned to the nature of the offence, and the exigency of the occasion, and administered in a proper manner.

[Cited in Fuller v. Colby, Case No. 5,149.]

5. The answer of the respondent upon oath in reply to interrogatories does not, in the admiralty, constitute positive evidence in his own favor. Its true effect is, either to furnish evidence for the other party, or, in a case doubtful in point of proof, to turn the scale in favor of the respondent.

[Cited in The Mary Paulina, Case No. 9,224; Jewett v. Cunard, Id. 7,310; The Australia, Id. 667; Havermeyers & Elder Sugar Refining Co. v. Compania Transatlantica Espanola, 43 Fed. 91.]

Suit in the admiralty in a cause of damage. The libel in substance stated as follows: That in July, 1839, the libellant, Michael Ryan, shipped on board the ship Arab, of which the respondent, Benjamin Cushman, was master, being then on a whaling voyage. That during the continuance of that voyage, and while the ship was off the island of St. Mary's, the captain came up and inquired of the libellant, how the cook obtained liquor and got drunk, and charged this libellant with giving liquor to the cook, which the libellant denied; whereupon, and without cause, the said Benjamin Cushman, with his fist, struck the libellant a violent blow over the eye, and cut a large and deep gash over the left eye of the libellant, and again immediately with his fist struck the libellant another violent blow upon the right side of the libellant's ear, so that the blood ran from it, and he was knocked down helpless upon the deck; and the said Cushman continued to kick and beat the libellant with a rope, after he was so knocked down. That afterwards, on the high seas, and on board the said ship Arab, on the 9th day of February last past, the said Cushman made another violent assault upon the libellant, and caused him to be seized up in the main rigging, and while so seized up, the said Cushman ordered the trowsers of the libellant to be stripped down, and his naked person exposed, and with a weapon called a "cat," inflicted fifteen severe blows upon the naked body of the libellant, so as to wound him severely; and, after causing the libellant to be cut down, the said Cushman continued to beat the libellant with said cat, and cut him across the legs and arms so that the flesh and limbs of the libellant were bruised and lacerated, and thereupon immediately, while the libellant was suffering great bodily pain and distress from the severe flagellation he had received, the said Cushman ordered the libellant to go to the mast-head, where he was kept during the space of nearly four hours, in the cold and rain, until he was so benumbed with cold, that he could with difficulty keep himself from falling. That the said libellant by means of the said assault, suffered severe pain in his head, and to this day his hearing is injured by the said blow, and that he has suffered damage to the amount of one thousand dollars.

The answer admitted the hiring of the libellant, and his shipping on board the Arab; and goes on, in substance, to state, that the crew shipped under a contract not to use ardent spirits on the said voyage, and with notice that spirits would not be furnished by the owners, or allowed to the crew, except for medical purposes, for which last purposes a small quantity of spirit was put on board. That the vessel sailed from Desolation island to Delago bay, and that on the voyage, and while she was lying at Delago bay, the said Ryan neglected his duty as steward, and was frequently in liquor himself, and embezzled the ship's stores by giving liquor and wines to others of the ship's crew, contrary to his duty and the express orders of the respondent and his officers. That on or about the 28th of August last, the said ship still lying at Delago bay, the respondent being on shore, a signal was made to him, from the said ship to come on board; that on repairing on board, he was told by Charles F. Cushman, one of the officers, that the said Ryan was in liquor, had been giving liquor to others of the crew, and had been doing damage and making disturbance in the ship. That the respondent called the said Ryan to him, and while charging the said Ryan with some of his conduct, was insolently answered by the said Ryan, and finally told by him, that he (the respondent) lied; whereupon the said respondent knocked the said Ryan down instantly with his fist, and that while the said Ryan was down, this respondent further corrected him, kicking him and striking him with a piece of launch warp, a quarter of an inch in thickness, two or three times; but denies that any permanent injury was done, or that the punishment was malicious or unduly severe; and especially denies, that the respondent struck the libellant on the ear, or on his head after he fell, and avers, that he struck him but once in the face. That

after this last mentioned occurrence, the said Ryan was repeatedly in liquor, and embezzled the spirits of the said ship, and removed for that purpose a lock on the scuttle of the run to protect the spirits, and that the respondent told the libellant, that unless he desisted he would flog him. But the libellant disregarded the warning, and on the 4th day of February last, on the passage home, the libellant having been in liquor, and having been insolent to the first officer of the ship, the respondent ordered him on deck and had him seized up, and flogged him with a cat made of eight strands, of a line of the size of a log line, after distinctly stating the reason for the punishment. And after the flogging, this respondent ordered the libellant to go to the foretop for two hours, after previously ordering him to go below and change his clothes, and denies, that the punishment was more than the exigencies of the case required. The answer goes on to state, that this suit is set on foot by a person to whom the said Ryan is indebted, and for the purpose of extorting money from this respondent.

The cause was tried before the district judge, who decreed to the libellant one hundred and fifty dollars and costs. From that decree the present appeal was taken, and argued at this term, by

George T. Curtis, for appellant.
T. G. Coffin, of New Bedford, for appellee.

STORY, Circuit Justice. This is the case of an appeal from the district court, in a cause technically called a cause of damage. The libel charges two assaults and batteries as having been committed on the high seas, and within the admiralty jurisdiction of the district court, by the respondent, Cushman, master of the whaling ship Arab, upon the libellant, Ryan, the steward of the ship; and the particulars are set forth articulately in the libel; the answer does not deny the assaults and batteries charged in the libel; but it does deny many of the circumstances of aggravation, and insists, that the same were inflicted upon the libellant for drunkenness and other gross misconduct, by way of correction and punishment, and in enforcement of the proper discipline of the ship. The learned judge of the district court, at the hearing, pronounced a decree in favor of the libellant, for one hundred and fifty dollars damages, and costs; and from that decree an appeal has been taken to this court. In cases of this nature where the damages are necessarily uncertain, and are incapable of being ascertained by any precise rule, and therefore, unavoidably rest, in a great measure, in the exercise of a sound discretion by the court, upon all the circumstances in evidence at the hearing, it is with extreme reluctance, that the appellate court entertains any appeal; and it expects the appellant to show, beyond any reasonable doubt, that there has been some clear mistake or error of the court below, either in promulgating an incorrect rule of law, or in awarding excessive damages; or that new evidence is now offered, which materially changes the original aspect of the case. If new evidence is offered which might fairly have been introduced in the court below, by the exercise of reasonable diligence, it is treated as being of far less value, than it would have been under other circumstances, especially if it goes to the very gist of the matters put in controversy by the libel and answer, since it may be justly imputed to the laches of the party, and is open to the suspicion of being framed to meet the new exigencies of the case. Indeed it may well be doubted, whether the introduction of such new evidence, going in contradiction to the proofs of the points in issue by the libel and answer in the court below, ought, according to the true principles, which regulate the practice in courts of admiralty in instance causes, ever to have been admitted. It is true that courts of admiralty, upon appeals in instance causes, may permit new allegations to be filed, and new evidence to be admitted; but the proofs are strictly confined to the support of the new allegations, and are not allowed to contradict the original testimony upon points in contestation in the court below. The rule is, that, under certain restrictions, the appellant may be permitted "non allegata allegare, et non probata probare." But then it is a part of the rule, that it shall not contradict the former evidence, ("modo non obstet publicatio testium") or that it shall solely go to the proof of the new allegations ("novis articulis ex veteribus pendentibus, et ex illis orientibus, et ad causam pertinentibus"). So the rule is laid down on many occasions; and Doctor Brown has affirmed its general adoption by courts of admiralty.[2]

But, as to the other point, where the damages or amount must necessarily rest in the sound discretion of the court, as it does in salvage causes and causes of damage, the constant policy in the courts of the United States, in the exercise of their appellate jurisdiction, and especially of the supreme court, has been, to discourage appeals upon slight or trivial grounds, and never to reverse the original decree, unless there is a plain mistake of law, or a gross excess in the amount of damage awarded. Indeed, under other circumstances, there would be no safety to any parties; and new motives to litigation would be perpetually presented, to stimulate the parties to take the chances of an appeal, in the hope that, in a mere exercise of discretion, the different courts might not arrive exactly at the same amount either of

[2] See 1 Brown, Civ. Law, 500; 2 Brown, Civ. Law, 436, 437.

salvage or of damage, although the decree in each case was founded upon the same principles. In the few cases of appeals of this sort, which have come before me, I have constantly been governed by this consideration; and I have never asked myself the question, whether originally I should have awarded exactly the same sum; but only, whether I could discern a clear and unequivocal mistake or error in the court below, either of law or of fact.

It is under this view of my duty, sitting as an appellate tribunal, that I have examined the allegations and proofs in the present case. Before, however, I proceed to the direct consideration of these matters, I wish to say a word upon another subject, which has been distinctly alluded to at the argument, as the probable ground of many controversies between the officers and crews of whale ships. It is said to be a general practice and long sanctioned, to allow the common seamen in these voyages to assign to persons, who are commonly, by an expressive phrase, called outfitters of seamen, the whole or a great part of the expected earnings of the voyage; so that the common seamen rarely have any substantial interest in the prosecution of the voyage, and are thus often tempted to acts of insubordination, misconduct, and even desertion; and that the owners of the ships often accept orders drawn upon them in pursuance of these assignments, and thus give to them their full approbation and sanction. If this suggestion be true, it is a fact, the existence of which is deeply to be lamented; and it requires the immediate interposition of the national legislature to check or prohibit such mischievous contracts, as ruinous equally to the interests of the seamen and the owners, and subversive of the soundest public policy. It would be difficult, indeed, to persuade a court of admiralty or a court of equity to enforce any such assignments, as they import almost upon their face a gross advantage taken of the weakness, or ignorance, or imprudence of this most valuable but thoughtless class of men; and I must confess my utter surprise, that the respectable merchants engaged in the whale fisheries, should lend the slightest countenance to such contracts. They are at war with the true interests of the owners, as well as of the crew in the voyage, and must sooner or later involve them in a common ruin.

But to return to the merits of the present controversy. The libel alleges two distinct assaults and batteries; one on the high seas, at Delago bay, on the coast of Africa, near St. Mary's, under Elephant island, in July, 1839; the other, on the high seas, on the homeward voyage, near the equator, on the 9th of February, 1840. The libel in substance charges, in respect to the first assault and battery, that the respondent struck the libellant a violent blow over the left eye, and cut a deep gash over that eye, and

again immediately with his fist struck the right side of the libellant's ear, so that the blood ran therefrom, and the libellant was knocked helpless on the deck; and that the respondent continued to kick and beat the libellant with a rope after he was so knocked down upon the deck.

The answer, by way of defence, in substance states, that while the ship was lying at Delago bay, the respondent being on shore, a signal was made from the ship, for him to come on board; that on repairing on board, he was told by Charles Cushman, one of the officers, that the libellant was in liquor, had been giving liquors to others of the crew, and had been doing damage, and making disturbance in the ship; that he called the libellant to him, and, while charging him with some of his conduct, was insolently answered by him, and finally told by him, that he (the respondent) lied; whereupon the respondent knocked him down with his fist, and while he was down the respondent further corrected him, kicking him in the fleshy part of his person behind, and striking him on the same place with a piece of launch rope, a quarter of an inch thick, two or three times. But the respondent denies, that any serious, permanent, or severe injury was done by such chastisement to the libellant, and avers, that it was done after his gross and provoking insolence, and for his previous misconduct, and without malice. And the respondent denies that he struck the libellant upon his ear, or that he struck him any more than one blow on his face, or that he struck him on his head after he fell. Now, upon this statement, it is clear, that in point of law, no justification is made out, even if the facts relied on in the answer are admitted to be true. It is well settled that no words of provocation whatsoever will justify the offended party in inflicting a blow upon the offender, although certainly they may constitute an excuse, which will mitigate the damages, even down to the point of reducing them to mere nominal damages, if the language of provocation be very gross and reprehensible, and calculated from the circumstances to draw forth strong resentment. And, as to chastisement by a master, by way of correction of seamen for drunkenness, or other misconduct, the law requires it to be moderate in degree, and proportioned to the nature of the offence, and the exigency of the occasion. If there be any excess in the mode of punishment, or any passionate violence, the law will not tolerate it, either as a justification, or as an excuse. And I must say, that although knocking a seaman down, under the impulse of sudden passion, from provocation by language of gross insolence and insubordination, or defiance, may, in consideration of human infirmity, be somewhat excusable on the part of the master, so as not ordinarily to be visited by severe damages; yet if it is followed up by other passionate acts, such as kicking, and beating,

and whipping the party when fallen, it betrays more of the spirit of revenge, than the just indignation of a wounded mind. But, if the punishment is meant to be applied to enforce a proper discipline on board the ship, or as a chastisement for past misconduct, or for present drunkenness, knocking a man down, or kicking him in the manner here stated, is not such a punishment as the law allows, much less such as it justifies. It is not in the proper mode, or at the proper time, or in the proper degree, to promote good discipline or good conduct.

But was there, in fact, any such provocation in language as the answer asserts; for I think it may be admitted, that the libellant was then, or might be presumed to be, somewhat affected with liquor, although not positively intoxicated, so as not to know what he was about. And certainly this was no venial offence. No witness, except Charles F. Cushman, who is a cousin of the master, speaks to the point. He says, that, "he, (the captain) asked him (the libellant) if the cook had been in the cabin. He said, 'No.' Then the captain said, he broke the slates. He said, he did not. The captain said, he did; and he told the captain, that he lied. Then Captain Cushman stepped up to him and struck him; and, about the time he struck him, the steward fell down." This is not very ingenuous. The witness would leave us to infer, not that the captain knocked the steward down, but that he fell down, so as to leave a doubt on the point. The answer admits, distinctly, that the captain knocked the steward down. The witnesses for the respondent give a very different account of the matter. Gordon states, that when "the captain came on board, Charles (meaning the witness Cushman) told the captain, that Ryan (the libellant) had been afoul of his rum. The captain then jumped on board, and called up Ryan, who was then steward, out of the cabin, and asked him what he had been doing with his liquor. Ryan said, he had not taken any of his liquor at all. The captain told him not to lie to him; that he had taken his liquor and given the cook some. He repeated the words over two or three times, not to lie to him; and said he knew a damned sight better; he had taken his rum. Ryan told him he had not; that the rum he had drunk did not belong to the captain, but was some he had got on shore. The captain then knocked him down, with his fist, and struck him two or three times after he was down, with his fist, on the side of his head, and then kicked him." But he adds, "I saw him kick him but once." And, in answer to interrogatories, he states further, that "Ryan's eye was bruised pretty bad; the skin was cut on the under lid of his eye and the blood came from that." Hood, another witness, says, that "the captain then jumped aboard and called Ryan. Ryan came to him, and the captain struck him with his fist, somewhere on his face or

head. Ryan fell on the deck. I heard Ryan say, 'What is this for, Captain Cushman;' the captain said, 'I will let you know what it is for?'" The witness saw nothing further, and went below and left Ryan lying on the deck. The testimony of the other witnesses on this point is far more loose and indistinct.

Now, taking this testimony together, it strikes me, that it is far from being satisfactory to establish the fact, that the libellant did, on this occasion, tell the captain that he lied. To say the least of it, the statement of Gordon contains quite as probable an account of the actual occurrences; and the onus probandi is on the respondent to make out his defence. But it is said, that the answer, being on oath, and responsive to the allegations in the libel, is evidence in favor of the respondent, and, therefore, ought, in a case of doubt, to be decisive in his favor. Now, in point of fact, the libel is also sworn to; and, therefore, there is only oath against oath, so far as there is any contradiction between them. But, in fact, the defence on this point is not responsive to any allegation in the libel; but it is new matter set up by way of defence to excuse the assault and battery. It is, therefore, strictly matter of fact, to be made out in proof by the respondent. And this leads me to remark, that the rule, adopted by courts of equity, that an answer under oath, when it is responsive to matters charged in the bill, is positive evidence in favor of the respondent, and will prevail, unless overcome by the satisfactory evidence of two witnesses, or of one witness and other corroborative circumstances, has never been adopted in courts of admiralty. The rule of the civil law seems to have been, that the testimony of a single witness was not sufficient to establish any material facts in controversy in a suit. "Sanximus (says the Code) ut unius testimonium nemo judicum in quacunque causa facile patiatur admitti. Et nunc manifeste sanximus, ut unius omnio testis responsio non audiatur, etiamsi, proeclaroe curioe honore proefulgeat."[3] But this rule does not necessarily import, that the answer of the respondent, upon the interrogatories propounded to him, shall be positive evidence in his favor. The case is very different from what it would be, where the respondent is sworn upon, what is called, the decisory oath. Pothier accordingly informs us, that the answers of the respondent to the common interrogatories and articles in libels, are evidence against him, but not in his favor; and that, in this respect, they greatly differ from the decisory oath.[4] My learned friend, the district judge of Maine, has examined this subject with his usual accuracy and full-

---

[3] Code, lib. 4, tit. 20, c. 9, § 1; Pothier, Pand. lib. 22, S. N. 19; 2 Story, Eq. Jur. § 5130.

[4] Pothier, Traité des Obligations, n. 820; Id., Traité de Procédure civile, pt. 1, c. 3, art. 5, § 5.

ness of learning in the case of Hutson v. Jordan [Case No. 6,959], and I entirely concur in his opinion, that the answer of the respondent in reply to interrogatories does not in the admiralty constitute positive evidence in his favor. Its true effect is, to furnish evidence for the other party, or, in a case hanging in equilibrio in point of proof, to turn the scale in favor of the respondent.

I have dwelt somewhat more at large upon the considerations, as well of law as of fact, applicable to the first charge in the present libel, than it might seem to require, because I was desirous of disposing of some points, which have not hitherto undergone a direct and positive adjudication in this court, although they have silently insinuated themselves into the common practice in this class of appeals.

The second charge in the libel is that, which constitutes the substantial grievance, upon which the present suit is brought. It states, in substance, that on the high seas, on the 9th of February last past, the respondent made another and violent assault upon the libellant, and caused him to be seized up in the main rigging, and, while so seized up, the respondent caused the trowsers of the libellant to be stripped down, and his naked person exposed, and with a weapon called a "cat" inflicted fifteen severe blows upon the naked body of the libellant, so as to wound him severely, and after causing him to be cut down, he continued to beat the libellant with the said cat, and cut him across the legs and arms, so that the flesh and limbs of the libellant were bruised and lacerated, and while the libellant was suffering great bodily pain and distress from the severe flagellation he had received, the respondent ordered him to go to the mast-head, and kept the libellant there nearly four hours, until he was so benumbed with the cold, that he could with difficulty keep himself from falling.

The answer of the respondent to this allegation, in substance, states, that, after the first assault and beating, the libellant was repeatedly in liquor, and embezzled the spirits of the said ship and took off a lock for that purpose, which the respondent placed upon the scuttle of the run for the purpose of protecting the spirits; and that the respondent then informed the libellant, that if he did not desist from taking the said liquors, he certainly would flog him. That the libellant disregarded the warning, and on the 4th of February last past, the libellant having been in liquor, and having been insolent to the first officer of the ship, the respondent ordered him on deck, had him seized up, and flogged him with a cat made of eight strands, of a line of the size of a log line, after distinctly stating to the libellant the reason of the said punishment, and referring it, as well to his present, as to his former misconduct. And after the said flogging, the respondent ordered the libellant to go into the

foretop for two hours, having previously ordered him to go below and change his clothes. And the respondent denies, that any serious, or permanent, or severe injury was done to the libellant, or that it exceeded the proper bounds of his lawful authority. Now in this answer it is somewhat remarkable, that the respondent does not state the number of blows struck by him with the cat, nor the place where they were struck; and he takes no notice of the allegation as to the blows struck after the libellant was cut down, and attempts no justification of them. In point of fact, the libel, as to the number of lashes, and the beating after the libellant was cut down, is fully maintained, at least in its substantial circumstances, by the concurrent testimony of all the witnesses; and some of them state the beating in a very aggravated form. It seems, indeed, that such was the severity of the lashes with the cat, which was on the naked parts below the back of the libellant, that an involuntary dejection (as I am reluctantly obliged to state) took place, and the subsequent beating was, because the respondent ordered the libellant to get a shovel to remove the offensive materials, and he did not find the shovel as quick as it was thought that he might. The sending the libellant to the foretop for two hours is admitted; and it is in proof, that he stood exposed during all that time in a drizzling rain, in a warm climate. Now, the court is asked to say, admitting that the charges of drunkenness and embezzlement of the spirits on board, which were designed merely as ship s stores, to be used in cases of sickness, are proved, (as I confess, that I think they are to some extent) whether the punishment was justified in point of law by the occasion, or whether it was excessive, and improper in its nature and degree. I admit, that the master is clothed with authority to correct and punish any seamen, who disobey the lawful orders and discipline of the ship, or who are guilty of other gross misconduct. But the correction must be reasonable in itself, and moderate in degree, and administered in a proper mode. If the master inflicts punishment in a violent, or brutal, or malignant manner, to gratify his passions, or in wanton abuse of his power, he is responsible therefor, and can not shelter himself from damages by general allegations of misconduct or insolence in the offender. The law clothes the master with summary authority in this respect, to enforce due discipline on board of the ship. But it should not be forgotten that the power is arbitrary and discretionary in its exercise; but it is deemed to be analogous to the power of a parent to inflict chastisement upon a disobedient child, or perhaps more nearly to that of a master over his apprentice.

Now, I must say, looking to all the circumstances of the present case, that I think the punishment was not only excessive in kind and degree, and disproportionate to the offence,

but it was persisted in with a rash resentment, and gross harshness, which admit of no apology. But I do not stop here. It strikes me that there was gross indecency and impropriety in the character of the punishment, and in the mode of inflicting it. I know of no right or authority in the master, thus indecently to expose the person of the seaman, and thus to degrade, as well as to punish him. To strip a seaman naked, and whip him severely with a cat, an instrument producing exceedingly sharp and agonizing pain, is a punishment, which if justifiable at all, is so only under extreme circumstances; and certainly is not justifiable for ordinary violations of the ship's discipline. Drunkenness and embezzlement of the ship's spirits by the steward are certainly grave offences, and deserve some punishment; and probably no court or jury would incline to weigh the punishment inflicted in such cases in very nice scales. But when a punishment is pursued with extreme severity, as, in this case, that with the cat was, and when the party, smarting under his sufferings, received other blows and lashes after he was cut down; and when, after this, he was ordered aloft for two hours in a drizzling rain, in the midst of his bruises, and pains and sufferings, and instead of those bruises and pains and sufferings being assuaged, they were to be thus aggravated, I, for one, must say, that there is in such conduct more of vindictive passion, if not of deliberate malice, than of any sense of justice, or desire to support proper order and discipline in the ship. But, when I add to this the utterly inexcusable indecency of stripping the libellant's trowsers down, and inflicting the lashes with the cat upon his naked person, it seems to me, that the court is called upon to reprove such excessive misconduct in strong terms. Has the master ever repented of his misconduct, or shown contrition, or expressed regret, since that period? Not at all; for when the process in the present suit was served upon him, his language was of a directly opposite nature. He regretted that he had not punished the libellant more. Then, is there any thing in the new evidence, that justly goes in mitigation of the offence, or to establish, that the wrong has been exaggerated? I hardly see how that can be maintained; for the answer admits the truth of the main allegations. But it is said, that the libellant has admitted, since the suit was brought, that he was not punished more than he deserved; and that the suit is now carried on substantially for the benefit of another person, who instigated the suit, and at whose expense it is carried on, and who is to receive the damages awarded by the court for his own use. It is to these two points, that the new evidence on behalf of the respondent is mainly addressed.

As to the supposed confessions of the libellant, made after the libel was filed, that he deserved the punishment, I must confess, that they come clouded with suspicion, and under all the circumstances, considering the quarter from which they come, and the time, and the nature of the testimony, and the relationship of the parties, I am not disposed to attach much importance to them. They are either not fully stated, or the precise bearing of the conversations was not understood by the libellant. In short, the admitted facts show, that the punishment was not deserved, but was excessive. It adds not a little to the scruples, that one might be supposed to entertain on such a subject, that the respondent did not offer this evidence at the original hearing, although he (but not his counsel) according to all probabilities, then knew the facts.

As to the other point, certainly the court will not suffer itself to be speculated upon by mere adventurers and intruders into a cause; nor award large damages, where the libellant seeks no redress, but is content to engage in a traffic, which savors of maintenance, and is every way reprehended in the law. But this last evidence can at most go only in mitigation of damages; and it cannot, as is frankly admitted, operate as a bar to the suit. But it appears to me that the point is not made out as a matter of fact. The evidence, so far as it goes, distinctly repels it; and the very party, who is alleged to be the maintainer, positively denies it; and the averments introduced contain nothing but what supports his testimony. The libellant was asked to settle the suit; but he declined it, as it clearly appears, because he had confided the management of it to an agent, without whose consent and approbation, he was advised by disinterested persons, that he ought not to act. I do not know, that there was anything reprehensible in this, if the agent was a sincere and faithful friend, acting, not for himself, but for the libellant. According, then, to my view of the case, there is nothing further for the consideration of this court. I cannot say, that the damages given by the district judge are excessive or unjustifiable. Knowing his habitual moderation, great experience, and just comprehension of all the difficulties and irritations of the nautical service, I should say, that there was the strongest reason to believe, that the damages were not excessive or unjustifiable. I can have no doubt, that the indecency as well as the excess of the punishment, had great weight in his mind. The question is not, whether I should have given exactly the same sum in damages; for in such cases there is large room for the exercise of discretion, as well as for difference of judgment. But that any clear error has been committed, I confess, that I am unable to perceive; and therefore I affirm the decree with costs.

CUSHMAN (UNITED STATES v.). See Cases Nos. 14,906–14,908.