## THE LORD DERBY.[1]

*(Circuit Court, E. D. Louisiana. June, 1883.)*

**1. ASSAULT AND BATTERY—SIXTEENTH ADMIRALTY RULE.**
An assault and battery is where one intentionally inflicts unlawful violence upon another. There may be such gross negligence that an intent to injure may be inferred therefrom, but where the case made by the libel does not show such negligence, nor bring any such negligence home to any particular individual, it is very far from a case of "assaulting and beating" within the sixteenth admiralty rule.

**2. LIABILITY OF VESSEL FOR DOG ON BOARD.**
A ship is liable for injuries inflicted by the bite of a dog, on board by consent of the master and owners, upon a person lawfully on board, and entitled to be carried safely.

**3. NEGLIGENCE.**
It was negligence, where a dog is a large, powerful animal, and suspected of a disposition to bite strangers generally, to chain him up under the cabin table, where he was concealed, because the cabin was the place where the libelant had been assigned to sleep, and where he had a right to go.

**4. MEASURE OF DAMAGES.**
The bite of a dog, particularly in a warm climate, is a very serious matter, outside of the actual pain and suffering experienced. The dangers of lock-jaw and the fear of hydrophobia are added to the mental and nervous sufferings, and so many people the shock to the system is such that no money compensation is adequate.

**5. SAME—APPEAL.**
When no additional testimony is taken the circuit court will not hastily disturb a decree on the point of damages, nor unless it shows manifest injustice. *Cushman v. Ryan*, 1 Story, 91, followed.

Admiralty Appeal.

The libelant, a pilot, was taken on board the steam-ship at the mouth of the Mississippi river, and while on the voyage up the river to New Orleans he was very seriously bitten by a dog, which had been brought from Europe for sale in this country, and which was kept in the cabin, chained under the table. This suit was brought against the vessel *in rem* for damages suffered thereby by the libelant.

*E. Howard McCaleb*, for libelant.

*J. Carroll Payne* and *Henry Denis*, for claimants.

PARDEE, J. The questions presented in this case are: *First.* Is the proceeding properly brought against the ship? *Second.* Was there negligence on the part of those in charge of the ship in caring for the dog, resulting in the injuries to libelant? *Third.* What damages, if any, shall libelant recover?

1. It is contended that the case, as presented in the libel, shows a case of assault and battery, which, under the sixteenth admiralty rule, "shall be *in personam* only." The ingenuity which suggested the point has not failed to supply the court with an ingenious argu-

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

ment to support it.    This definition is given of assault and battery, as taken from 3 East, (*Leame* v. *Bray*,) 593:

"Whenever one willfully or *negligently* puts in motion a force, the direct result of which is an injury, it constitutes an assault and battery, and the action brought should be *trespass vi et armis*."

An examination of the case shows that the brief goes further than the authority cited.    The question before the court was whether the action was properly brought in trespass, and all the judges agreed that where an injury results directly from force, trespass lies, but nothing is said of assault and battery.    The other cases cited (*Gibbons* v. *Pepper*, 1 Ld. Raym. 39; *Blackman* v. *Simmons*, 3 Car. & P. 138) are also cases of trespass.    An assault and battery is where one intentionally inflicts unlawful violence upon another, and if there is a case in the books which goes further than this, it is an unsafe case to follow.    That there may be such gross negligence that an intent to injure may be inferred therefrom, may be conceded, and perhaps *Blackman* v. *Simmons*, *supra*, shows such gross negligence; but the case made by the libel does not show such negligence, nor does it bring such negligence home to any particular individual, as would be necessary in a case of assault and battery.

In my opinion the case made in the libel is very far from a case of "assaulting and beating," within the sixteenth admiralty rule. And the case, as disclosed by the evidence, seems to me to be a clear case of liability on the part of the ship.    The dog inflicting the injuries on libelant was brought over on the ship, with the consent of the master and owners, to be disposed of in this port.    It was part of the cargo.    The libelant was lawfully on board as pilot, and entitled to be carried safely.    An injury to him from carelessness, or negligence in handling or caring for the dog, would entitle him to remuneration from the ship the same as if his injuries had resulted from goods falling on him, or from defective spars or rigging.

2. The evidence shows that the dog was a large, powerful animal, suspected of a disposition to bite strangers generally, and known to be of a good watch-dog breed, likely, when chained, to bite any stranger coming within his tether, and attempting to interfere with things under his guard.    This is the character that claimant's witnesses give the dog.    The libelant's evidence, and several conceded circumstances, go to show that the dog was ferocious, and that the master well knew his dangerous character and disposition.    But it is not necessary to go further than the conceded character of the dog. Taking that as stated, it was negligence to chain him up under the cabin table, where he was concealed, because the cabin was the place where the libelant had been assigned to sleep, had slept, where his baggage was placed, and where he had a right to go and did go for it.

Very able arguments and briefs have been submitted as to the responsiblity arising for injuries inflicted by domestic animals like dogs;

whether they must be known to bite, or wont to bite, before the owner is responsible; and whether there is a difference between the common law and civil law on the subject. But I do not find it necessary to go into the law, being satisfied that enough was known of this particular dog's inclinations and disposition to satisfy the most liberal rule claimed, unless it should be claimed that a dog must actually have bitten somebody before he can have a character, and the owner can be held responsible.

3. The evidence in this case shows that the libelant was seriously bitten in the calf of the leg, with several slight wounds, but one deep one, which really caused pain, sickness, and danger. He went under treatment, and got along well for about four days, when he felt able to and did return to his usual business, making one trip as pilot to the mouth of the river. On his return from this trip his leg swelled, his pains increased, paroxysms followed, and for a time he was threatened with lock-jaw. This relapse kept him confined for several weeks, and at the taking of his evidence he had not fully recovered. The evidence of the doctors show that his early attempt to resume work resulted in protracting his confinement and increasing his sufferings. The district court assessed damages, including loss of time nursing, medicines, doctors' fees, and suffering, at $2,500. This allowance is vigorously combated here as excessive; as judicial liberality, etc.

The point is urged that it was gross negligence on the part of libelant to return to work so soon, and before his wounds had entirely healed, and that this negligence aggravated his injuries and increased the extent of damages, and that for this aggravation and increase he cannot recover. The attempt to return to work too early made by the libelant was certainly unwise and injurious, but I am not prepared to call it gross negligence. The doctor did not recommend it; neither did he forbid it, as he says himself: "I consented to his going, which certainly was a mistake." As it appears to me, it was an unwise step, taken with the commendable desire on the part of a workingman to resume the labor on which he had to rely to support his family. The doctor did not know until after the event that it was unwise; neither did the libelant. So, on this point, I agree with claimants as to the law, but I reject the conclusion of negligence as claimed. See Sherman, Neg. ¶ 35. The bite of a dog, particularly in this climate, is a very serious matter outside of the actual pain and suffering experienced. The dangers of lock-jaw and the fear of hydrophobia are added to the mental and nervous' sufferings attendent upon such injuries; and, as the evidence shows, they were experienced by the libelant in this case. To many people the shock to the system resulting from the most insignificant bite of a dog drawing blood is such that no money compensation is adequate. The ghost of hydrophobia is raised, not to down during the life-time of the victim.

On the whole case, while I am not prepared to say that I would have made the same allowance as the district judge has, had the case come before me originally, I now see no good reason to vary the amount. When no additional testimony is taken the circuit court will not hastily disturb a decree on the point of damages, nor unless it shows manifest injustice. See *Cushman* v. *Ryan,* 1 Story, 91; *The Narragansett,* 1 Blatchf. 211; *Taylor* v. *Harwood,* Taney, 437.

In *Cushman* v. *Ryan, supra,* Justice STORY says:.

"In cases of this nature, where the damages are necessarily uncertain, and are incapable of being ascertained by any precise rule, and therefore unavoidably rest in a great measure in the exercise of a sound discretion by the court, upon all the circumstances in evidence at the hearing, it is with extreme reluctance that the appellate court entertains any appeal, and it expects the appellant to show, beyond any reasonable doubt, that there has been some clear mistake or error of the court below, either in promulgating an incorrect rule of law or in awarding excessive damages, or that new evidence is offered which materially changes the original aspect of the case."

A decree will be entered for the libelant in the same terms as in the court below