[No. 27282. *En Banc.* July 7, 1939.]

FRANCES AQUINO, *a Minor, by Justo Aquino, her Guardian ad Litem, et al., Appellants,* v. ALASKA STEAMSHIP COMPANY, *Respondent.*[1]

[1]Reported in 91 P. (2d) 1014.

*Austin E. Griffiths,* for appellants.

*Bogle, Bogle & Gates, Stanley B. Long,* and *W. T. Beeks,* for respondent.

BEALS, J.—Plaintiffs Justo and Effie Aquino are the parents of plaintiff Frances Aquino, suing herein for damages resulting from injuries received by plaintiff Frances Aquino, August 31, 1937, on board one of defendant Alaska Steamship Company's steamships. Plaintiffs were passengers for hire upon the ship, proceeding from Alaska to Seattle. On the date referred to, Frances Aquino, then four or five years old, and while on board defendant's ship, was bitten by a dog belonging to defendant Frank Wright, Jr., who was also a passenger on defendant's boat, and who had paid for the transportation of himself and his dog, from Alaska to Seattle. Plaintiffs demanded damages against both Alaska Steamship Company and Frank Wright, Jr., and upon trial of the action to the court, sitting without a jury, plaintiffs were awarded judgment against defendant Wright for the sum of $268 and costs, the action being dismissed as to defendant steamship company. From the judgment of dismissal as to the steamship company, plaintiffs have appealed.

No statement of facts is before us, appellants submitting their appeal upon the findings of fact made by the trial court.

Appellants assign error upon the refusal of the trial court to enter judgment in their favor against respondent, and upon the denial of their motion for a new trial.

After finding certain formal matters, the trial court found that, August 31, 1937, the three plaintiffs and defendant Frank Wright, Jr., were passengers for hire upon a steamship belonging to and operated by respondent, proceeding from points in Alaska to Seattle; that defendant Wright had with him on shipboard a Scottish terrier dog, which he had owned for several years, and that Wright had paid to respondent the regular tariff charged for transporting the animal; that the dog was usually kept in the ship's hold, but that, on several occasions prior to the date above referred to, Wright, with the consent of respondent's officers in charge of the ship, had taken the dog from the ship's hold to the upper deck for the purpose of exercising it; that, early in the morning of the day above-mentioned, Wright took the dog from the hold, and, the ship having docked at Ketchikan, Wright tied the dog to the ship's rail opposite his stateroom on B deck and, with his wife, went ashore, leaving the dog unattended and tied to the rail; that, while the dog was in this position, and during the absence of Mr. and Mrs. Wright, plaintiff Frances Aquino, with her parents, passed by the place the dog was tied, whereupon the dog jumped at Frances and bit her on her upper lip; that respondent had no notice that the dog was fastened to the ship's rail until after the injury to the child, when one of respondent's employees took the dog back to the ship's hold; that no evidence was introduced to the effect that the dog had ever bitten anyone before, or that, to the knowledge of its owner, the dog was vicious. The trial court further found that, on

arrival of the ship at Seattle, respondent paid certain expenses incurred in treating the child's injuries.

The court concluded that defendant Wright was guilty of negligence in tying the dog to the rail and leaving it unwatched; that Frances Aquino should be awarded judgment against defendant Wright for $250; and that plaintiffs Justo and Effie Aquino should be awarded judgment against Wright for eighteen dollars. The court concluded that respondent was entitled to the entry of a judgment of dismissal.

Appellants argue that, from the facts found, the court should have concluded that appellants were entitled to a judgment against respondent and entered judgment accordingly.

Appellants contend that, if defendant Wright is liable to appellants, respondent is necessarily also liable; that, when respondent turned Wright's dog over to him for exercising, Wright became respondent's agent, and respondent is liable for any negligent act of Wright's which resulted in injury to a passenger. Appellants also contend that it was the duty of respondent's officers in charge of its ship to keep the passageways clear from obstructions which might injure a passenger. Appellants advance some other arguments for the reversal of the judgment appealed from.

It is, of course, true, as contended by appellants, that the master of a seagoing vessel has full control of the ship and all on board; that the safety of passengers is the first consideration; and that a ship, acting as a common carrier for hire, owes to its patrons a very high degree of care. It is also true that passageways, gangways, etc., intended to be used by passengers, should be kept clear of dangerous obstructions.

Appellants argue that this court should hold that respondent's agents in charge of the ship should have known of some supposed dangerous qualities possessed,

as a breed, by Scottish terriers. The court affirmatively found that no evidence was introduced to the effect that the dog had ever bitten anyone on any previous occasion, or that, to the knowledge of the owner, the dog was vicious. While it is doubtless correct, as argued by appellants, that a Scottish terrier is essentially a one-man's dog, and is equipped with strong, sharp teeth and powerful jaws, we find no basis for holding that respondent's agents should have exercised any greater care or restraint over the animal than they should have exercised over a dog of any breed not generally known to be vicious.

The court found that defendant Wright, on occasions prior to August 31st, had been allowed to take the dog from its quarters for the purpose of exercising it on the upper deck. It cannot be held that, in allowing this, respondent's agents were subjecting their passengers to any risk, or that the ship's officers made defendant Wright such an agent of the ship as would render the ship liable for his negligence. The court expressly found that Wright tied the dog to the ship's rail opposite Wright's stateroom door on B deck and left the dog so tied, and that respondent's officers and agents had no notice that the dog had been left fastened to the ship's rail until after the injury to Frances. The trial court properly held that defendant Wright was guilty of negligence in tying the dog to the ship's rail and leaving the animal there unattended; but the question of respondent's liability, in the absence of knowledge that the dog had been left tied to the rail, presents an entirely different question.

Of course, the only question before this court is whether or not the findings support the conclusion of law to the effect that respondent is not liable to appellants.

A carrier of passengers by sea is not an insurer of the safety of its patrons. In 58 C. J. 548, § 932, is found the following:

"A vessel carrying passengers is not absolutely liable for, nor an insurer of, the safety of its passengers as a carrier of goods is for its cargo; but it is responsible only for injuries that have been caused by the negligence of it or its servants; and hence it is not liable for injuries caused by an accident which the proper degree of care, skill, and diligence could not anticipate or prevent."

In the case of *Kitsap County Transportation Co. v. Harvey*, 15 F. (2d) 166, 48 A. L. R. 1420, the circuit court of appeals, ninth circuit, said: "A common carrier is to be held to a high degree of care, but is not an insurer."

In the matter of *The Thessaloniki*, 267 Fed. 67, the circuit court of appeals, second circuit, said:

"The steamship company was not an insurer as to the passengers, but only liable for ordinary care; that is, care according to the circumstances, in this case a very high degree of care. As to the cargo and passengers' baggage, it was an insurer . . ."

Appellants rely upon the opinion of this court in the case of *Westcott v. Seattle etc. R. Co.*, 41 Wash. 618, 84 Pac. 588, 4 L. R. A. (N. S.) 947, 111 Am. St. 1038, in which a company operating a city street car was held liable to a passenger for damages caused by a dog taken into a passenger street car by another passenger, with the company's permission. The conductor of the car permitted a woman passenger to take into the car a four months old puppy, with the result that the clothing of another woman passenger suffered damage, for which she sought recovery. In a short *per curiam* opinion, this court laid down the rule that

"A street car company has no right to carry dogs upon a coach that is set apart for passengers, and if it

does so, and damage is caused by said dog, it must respond to the same."

This court correctly held that a street car company should not undertake to carry dogs upon a passenger coach. The conductor admitted the dog, which he should not have done, as certainly the introduction of a four months old puppy into a passenger street car simply invited trouble and annoyance. The puppy did not attack or bite a passenger, but committed nuisances which damaged the passenger's clothing. The company was properly held responsible for such damage.

In the case at bar, the dog was properly taken on board ship, the transportation of dogs being contemplated as part of the regular business of the company. It was not unreasonable to turn the dog over to its owner for proper exercise. The dog was a small one, and not strong enough to attack human beings in spite of the efforts of its owner. The dog was not known to be vicious, and we know absolutely nothing of the circumstances under which the animal did bite the child. Doubtless, there was evidence before the trial court concerning this matter, but the findings are silent on that point. The upper deck of a passenger steamship is large and well fitted, and indeed in part intended, for the use of passengers in taking exercise. To permit a dog to be taken upon such a deck, in the care of its owner, a competent person, is an entirely different matter from permitting a dog to be carried upon a passenger street car.

In the *Westcott* case, it does not appear that there was any intervening negligence on the part of the owner of the puppy, which resulted in the damage to the clothing of the other passenger. In the case at bar, but for the negligence of defendant Wright, no damage would have occurred.

In the case of *Trinity & S. R. Co. v. O'Brien,* 46 S. W. (Tex. Civ. App.) 389, a prospective passenger, intending to board a railroad train, while in a waiting room at the station, was injured by a dog belonging to another passenger, which dog had been delivered to an employee of the railroad, to be transported. There was evidence to the effect that the owner of the dog had told the porter that the animal was likely to attack strangers, and that the dog should be placed where he could do no harm. There was also evidence from which the jury might have concluded that the railroad company's agent knew of the vicious propensities of the dog, and notwithstanding this knowledge, left the dog in such a position that passengers were subject to attack. In the case cited, the railroad's agent at all times had possession of the dog and failed to take proper care to see that the dog injured no one.

In the case of *Barrett v. Malden & Melrose R. Co.,* 85 Mass. 101, the supreme court of Massachusetts held that a horse railroad company was liable for injuries suffered by a passenger from the bite of a dog which had been left for several weeks under the care of a conductor in the railroad's employ. It appeared that defendant's agent had charge of the dog and knowledge of its presence, and the defendant was properly held responsible to a passenger who was attacked by the dog.

In the case of *The Lord Derby,* 17 Fed. 265, an action *in rem* against the ship, brought by the pilot for the purpose of recovering damages occasioned by an attack on the pilot by a dog while on board ship, it was held that the ship was liable, but it is evident that the decision was based upon negligence of the ship's officers and agents in choosing the place in which the dog was kept, and in the steps taken to prevent the dog from causing injury to anyone.

Appellants cite several other cases in which recoveries were allowed as the result of attacks by dogs, but these cases are not relevant here, as no question involving the duty owed by a carrier to its passenger was presented.

In the cases cited by appellants, above referred to, it appears that the dogs which attacked the passengers were, at the time, in the custody of the defendants' agents. Unless it should be held that defendant Wright was respondent's agent to take care of the dog, these cases are not in point.

We are convinced that it cannot be held that, by turning defendant Wright's dog over to him for exercise, respondent made Wright its agent to such an extent that respondent is liable for Wright's negligence in tying the dog to the rail. Wright's act was such as would not be reasonably contemplated; indeed, it was foolish to an extreme. That an owner, taking a dog out to exercise the animal on board ship, would tie it to the ship's rail in a passageway to be used by patrons of the ship, and leave the dog unattended, would not reasonably be anticipated. We hold that respondent is not liable herein on the theory that Wright was its agent.

Passageways on ships, intended for the use of passengers, must be kept clear and free from dangerous obstructions. Appellants cite the case of *Powell v. Great Lakes Transit Corp.*, 152 Minn. 90, 188 N. W. 61, in which it was held that a passenger, who tripped on a piece of baggage, could recover against the carrier. There are other cases to the same effect. In the case cited, there was loose baggage scattered about in front of the purser's office. In such a place, the baggage must have come under the observation of the ship's officers. The court held that the question of negligence was for the jury.

The general rule is well stated in the annotation in 19 A. L. R. 1372, as follows:

"Liability of a carrier for an injury to a passenger caused by the obstruction of a car aisle or platform by property of another passenger arises only in case the carrier has been negligent in permitting the obstruction. The carrier, as a general rule, is liable only where one of its employees in charge of the car knows of the obstruction in time to have it removed before it can cause injury, or where the obstruction exists for such a length of time that an employee, in the proper discharge of his duties, should know of its presence."

In the case at bar, respondent is not liable for the wrongful act of defendant Wright in tying the dog to the ship's rail. The trial court found that respondent had no notice that the dog was tied to the rail until after the injury to Frances. It must, then, be determined whether or not respondent is liable upon the ground that it should have known that the dog was tied in the passageway. The findings are silent as to the length of time the dog was left unattended and tied to the rail. The child may have been bitten within two minutes after Wright left the ship.

On an appeal such as this, when the only question argued is that the findings do not support the judgment, nothing is presumed against the judgment, but all doubts are resolved in favor of its validity. It must appear that the findings do not support the judgment.

The officers of a ship cannot watch every passenger every moment, and cannot be held responsible for every act of a passenger in leaving a piece of baggage or any other article in an improper place, with the result that another passenger is injured. In 4 R. C. L. 1188-9, § 610, is found the following:

"The general rule seems to be that when a carrier has provided a sufficient vehicle, it will not be liable

for an injury to a passenger caused by an article brought into the vehicle by another passenger, unless such injury could reasonably have been foreseen by the carrier, and by the exercise of ordinary care could have been provided against. . . . By the weight of authority, in order to hold a carrier liable to a passenger for injuries sustained by falling over baggage or other articles placed in the aisle by another passenger, the employees of the carrier must have had actual notice of the obstruction, or it must have remained there a sufficient length of time to affect them with constructive notice."

If a passenger, whose baggage has been deposited in a storeroom, asks that his handgrip be turned over to him so that he may take the same to his stateroom, and then, instead of taking the grip to his stateroom, leaves it in a passageway, with the result that another passenger trips over it and is injured, it would seem that the ship would not be liable for having granted the passenger's perfectly reasonable request, unless the ship's officers had actual notice of the presence of the baggage in the passageway, or from the length of time it remained there, should have known of its presence.

Here we have an affirmative finding of lack of actual knowledge on the part of respondent. In the absence of a finding to the effect that the dog remained tied to the rail such a length of time that it must be held that respondent should have had notice of the situation, under the general rules above referred to, it cannot be held that respondent is liable herein upon the principle that it should have known that a situation, dangerous to passengers, existed, and should have corrected the same.

There is a surprising dearth of decided cases which present questions similar to that here to be determined. Those cases more nearly in point involve the

question of a carrier's liability for injuries suffered by a passenger occasioned by the act of another passenger in placing baggage in an improper or insecure position. It would seem that these cases all turn upon the matter of whether or not the carrier's agents knew, or should have known, of the improper position of the baggage or other article. In the case at bar, the court found that respondent had no actual knowledge, and the findings afford no basis for a holding by this court that the situation had existed for such a length of time that respondent should have known of the dangerous condition.

Appellants draw some supposed analogy between the responsibility of a carrier for injury to cargo and injury to a passenger. The rule seems to be that a carrier by sea is generally an insurer as to cargo, but not as to passengers. Discussion of this rule is not necessary to a determination of the case at bar.

Appellants cite the case of *Knight v. Duggan,* 163 Wash. 107, 299 Pac. 986, in which this court, on appeal based upon the findings alone, corrected what we held to be an inconsistent finding fixing the amount of damage. It was held that the finding corrected was inconsistent with other specific findings. The case affords no basis for disturbing any finding presented here.

It cannot be held that the conclusions of law are not supported by the findings entered, or that the findings do not support the judgment dismissing the action as to respondent.

The record affords no basis for a holding that the trial court committed reversible error in denying appellants' motion for a new trial.

Finding no error in the record, the judgment appealed from is affirmed.

MAIN, GERAGHTY, ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

MILLARD, J. (concurring in the result)—I concur in the result. In the absence of a statement of facts, it will be presumed that the evidence supports the judgment, unless the findings are complete and negative the existence of an essential fact.

STEINERT, J. (dissenting)—I am of the opinion that, when the steamship company permitted the dog to be taken from the hold, where it was required to be kept, to that part of the vessel which was provided for the use of passengers, it was under the duty of exercising reasonable care to see that the animal did not inflict injuries upon its passengers; that, when it permitted the owner of the dog to take it for an excursion upon the deck, it made the owner its agent for that purpose; that, upon such excursion, the act of the owner in leaving the dog tied to the ship's rail became the act of the company; and that, the owner having been found to be negligent in that respect, the steamship company became liable for the damages done by the dog.

I dissent.

BLAKE, C. J., concurs with STEINERT, J.