TAYLOR (GREEN v.). See Case No. 5,761.

———

## Case No. 13,794.

### TAYLOR v. HARWOOD et al.

[1 Taney, 437.] [1]

Circuit Court, D. Maryland. Nov. Term, 1845.

CONTINUANCE—ABSENCE OF WITNESS—COLLISION —WEIGHT OF EVIDENCE — APPEAL — ADMIRALTY JURISDICTION.

1. Where a witness was summoned to testify in a case in the district court, and did not attend, but no continuance was sought on that ground, and no summons was issued for his attendance in the circuit court, until five days before the case on appeal was called for trial, and his name was not called till the case was called for trial: *Held*, that his absence was no cause for a continuance.

[Cited in brief in Re Hawkins, 13 Sup. Ct. 521.]

2. The court of admiralty never suffers the substantial justice of the case to be defeated by matters of form.

3. If any persons have joined in a libel who are not competent to sue for the matter complained of, the circuit court, although an appellate court, will give leave to amend, and to strike out the names of parties improperly introduced, so as to enable it to dispose of the appeal upon its real and substantial merits.

4. The admiralty court has jurisdiction in cases of collision happening upon tide-water in the Chesapeake Bay. or the rivers emptying therein: the jurisdiction has been settled by the decision of this court, and has been acted upon on several occasions. ard cannot now be considered as open for argument.

5. The omission of a known legal duty, is such strong evidence of negligence and carelessness, that in a case of collision. where one of the vessels did not carry the light required by law, she should be held altogether in fault, unless clear and indisputable evidence be established to the contrary.

[Cited in The Sunnyside, Case No. 13,620; Richelieu & O. Nav. Co. v. Boston Marine Ins. Co., 26 Fed. 602: Meyer's Excursion & Nav. Co. v. The Emma Kate Ross. 41 Fed. 828; The Athabasca, 45 Fed. 655.]

6. When all the witnesses are equally trustworthy. it is not by the number that the court must be governed; but rather by the means of knowledge they respectively possessed.

———

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

7. In an appeal from the district court, the judgment of that court is to be regarded as correct, unless the appellant can show it to be erroneous; the burden of proof is upon him. In a case involving purely a question of fact, depending upon the testimony of a multitude of witnesses, whose statements are inconsistent with each other in material and essential particulars, and whose relative title to credibility is to be carefully weighed and scrutinized, nothing but the firmest and clearest conviction that the district court has fallen into error, will justify the circuit court in reversing the judgment.

[Cited in The Lord Derby, 17 Fed. 268.]

[Cited in Reed v. Reed, 114 Mass. 373.]

[See Baker v. Smith, Case No. 781; Bearse v. Three Hundred and Forty Pigs of Copper, Id. 1,193.]

8. New testimony introduced in an appellate court, in admiralty proceedings, is always listened to with great caution, and is never, except under peculiar circumstances, entitled to the same consideration as testimony which had been given in the district court

[Cited in The Saunders, 23 Fed. 304.]

[Appeal from the district court of the United States for the district of Maryland.]

The libel was filed on the 16th of June 1845, by the appellees [James Harwood and others], owners of the steamboat Fredericksburg, against [Robert Taylor, claimant of] the steamboat Boston, to recover damages for injuries sustained by a collision in the Chesapeake Bay. Both the steamers were owned by citizens of Maryland, and were engaged in performing voyages within the limits of that state, and were within those limits at the time of the collision. A great deal of conflicting testimony was taken in the case, the effect of which is stated in the opinion of the court. The decree of the district court was in favor of the libellants [case unreported], from which decree an appeal was taken to this court. When the case was about to be heard on the appeal, an application for a continuance was made by the appellant, on the ground of the absence of a material witness, and an affidavit filed to sustain his application. This application was refused by the court, and the following reasons assigned.

George M. Gill, for appellant.
J. Mason Campbell, for appellees.

TANEY, Circuit Justice. It is admitted in this case, that the witness was summoned to the district court, but did not attend, and was not examined; he sails in a vessel, trading between this place and Havre de Grace; if he were present the party would be entitled to examine him, according to the practice of the admiralty courts. This practice, so contrary to that of chancery and common law, in cases of appeal or writ of error, can only be justified from the character and pursuits of witnesses usually required in admiralty proceedings, whose occupations most commonly prevent them from remaining long at one place, and often therefore make it difficult to procure their attendance at the moment they are wanted. And the same principle prohibits the court, when sitting on an appeal, from continuing the case over to another term; for, if the party might continue to seek out new testimony, and thus delay the appeal until he can get it, the appeal might never be tried; he cannot, when he appeals, crave time to make out a new case; he must come prepared with his new testimony, if he desires to use it. This has always been the decision of this court, and was so ruled several years ago.

There is this strong reason in this case to refuse the continuance, that it was not sought in the district court on account of the absence of this witness. After the disobedience of the witness to the process of that court, he ought to have been summoned earlier to this, and process of attachment prayed against him, if he did not attend; due diligence required this; but summons did not issue for him until five days ago, and he was never called until to-day. When witnesses have been examined in the district court, it is the duty of the party to have their depositions reduced to writing, if he contemplates an appeal in case of a decision against him; and if he fails to do so, and the witness does not attend upon summons, it will, in general, be no ground of continuance; because the party has not used proper diligence to procure his testimony, unless he requires his testimony to be reduced to writing in the district court. There may be a case where special circumstances of surprise upon the party, or sickness of the witness might except it out of the rule, but it must be a strong case that would induce this court to except it; because, from the nature of the greater part of cases in admiralty, the character and pursuits of the witnesses make it essential to the principles and administration of justice that appeals should be promptly heard and decided.

The appeal having been tried at this term, the following opinion was delivered by—

TANEY, Circuit Justice. The case, as presented to the circuit court, is merely a question of fact upon the testimony offered. The points of law which were raised and discussed on the trial in the district court, have been waived in this court by the counsel for the appellants; and very properly waived, for they are either unimportant to the decision of the controversy, or have been too long and too well settled, to be now open for argument. For, as to the suggestion, that some of the libellants have no interest in the Fredericksburg, and are, therefore, improperly made parties to the libel, it is not supported by the proofs, so far as any have been offered on this point; and if it had been otherwise, yet the court of admiralty never suffers the substantial justice of the case to be defeated by matters of form. If any persons had joined in the libel, who were not competent to sue for the matter complained of, this court, al-

though it is the appellate court, would give leave to amend, and to strike out the names of parties improperly introduced, so as to enable it to dispose of the appeal upon its real and substantial merits.

As regards the jurisdiction of the admiralty court, in cases of collision happening upon tide-water in the Chesapeake Bay, or the rivers emptying therein, the point was adjudged in this court, and the jurisdiction sustained, before I came upon the bench; and has since, on several occasions, been exercised, without question, so that it cannot now be considered as open for argument.

Upon the facts in controversy, a multitude of witnesses have been examined, and as almost always happens on such occasions, there is much contrariety and conflict in the testimony produced by the different parties. This difference does not generally arise from any desire to misrepresent the transaction, but from the different points of view from which it was observed, from the different times at which their attention was first called to the danger, from the different degrees of coolness and composure with which it was viewed, the different degrees of knowledge which the parties possess as to the management of the vessel, and perhaps, above all, to the prejudices excited on board the different boats, by the representations of those more immediately responsible, made immediately after the collision has taken place, when each one is desirous of justifying himself, and throwing the blame upon the other. But whatever may be the cause, it is evident that, in this case, any attempt to reconcile the statements of the different witnesses would be utterly hopeless, and the court must proceed to decide the case according to the weight of the testimony, and the degree of credit to which, under all the circumstances, it thinks the respective witnesses are entitled.

It is unnecessary, in this opinion, to enter into a detailed examination of the various statements made by the different witnesses; indeed, such an examination would fill a volume. It is sufficient to say, that after a careful and minute analysis of the whole testimony, and deliberately considering the arguments of the counsel for the respective parties, I have come to the following conclusions:

1. That the Boston ran into the Fredericksburg nearly stem on, striking the Fredericksburg on her starboard bow, and causing the injuries complained of. I think this conclusion inevitable, not only from the marks on the bow of the Fredericksburg, so frequently spoken of and described by the witnesses, but also from the nature of the injuries sustained by the canal-boats, which the two steamboats had in tow at the time. Each of the steamboats had two canal-boats on each side, and the canal-boats, of course, headed precisely in the same direction with the steamboats to which they were attached; when the collision took place, the outer canal-boat, on the side of the Boston, had her stem broken, and the planks and timbers of her bows forced open, so that she was in danger of sinking, and so directly upon her stem was the blow given, that the fastenings which bound her to the inner boat were broken, and she drifted away and did not press the inner boat against the side of the Boston; the head of the inner boat was also injured, but not so much as the outer one. But the outer boat on the starboard side of the Fredericksburg, had, in the language of the witness, "her side knocked in, her bow deck knocked over and jammed off, and her stern-post broken, and one of her timber-heads;" and she was pressed so forcibly against the inner canal-boat, that the latter was driven under the wheel of the Fredericksburg, where it became so fastened that it required some time and exertion to release it, when the collision was over, and the steamboats had separated. These circumstances, about which there is no dispute, and no conflict in the testimony, show that the Boston came into collision head on; and they confirm the testimony of Campbell, the pilot of the Fredericksburg, who was then at the helm, who stated that the canal-boats at the side of the Fredericksburg were first struck, and that the Boston then glanced off and struck the blow on the bow described by the witnesses; he is also confirmed by the testimony of Worthington, a passenger on board, who swears that there were two shocks from the collision, one rapidly succeeding the other; and he mentions circumstances which show that, in this matter, he cannot have been mistaken.

2. It is also established by the testimony, that when they came so near as to render the collision inevitable, unless the course of the boats was changed, the pilot caused the engine of the Fredericksburg to be stopped, and putting his helm hard to starboard, the vessel was falling off to the larboard side at the moment she was struck; but on the part of the Boston, the engine was not stopped, until she actually struck, and no effort appears to have been made to check her speed or lighten the blow.

3. When the two boats came in sight of each other, the Fredericksburg had just turned Locust Point, and the Boston, Sandy Beach, being the two opposite ends of the Shesutie Island. The weather was rough, and the Fredericksburg being a small boat, with five canal-boats in tow, it was deemed necessary, or at all events prudent, to keep her head to wind, which was adverse to her; and this directed her course further out from the island, and nearer to the eastern shore, than she would have pursued with more favorable weather. When she was first seen by the Boston, the latter was heading north-by-west, which is the ordinary and proper course up the bay along Shesutie Island, when a boat is bound for Havre de Grace; but after the course of the Fredericksburg was observed, and she was seen standing more over towards the eastern land than usual, the

Boston changed her course from north-by-west to north-by-east, and continued afterwards to bear more and more to the eastward, until she was heading about E. N. E., when the collision took place; and had, by the admission of her own commander at the time, gone at least two miles out of her ordinary and appropriate course.

The excuse offered for this otherwise unaccountable proceeding of the Boston, is, that it is the established usage with steamboats to go to the right when they are meeting one another; and moreover, that there was an agreement to that effect between the owners of these boats, and that the changes in the course of the boat, and the deviations from the usual track, were made in order to execute that agreement. But it is impossible to give such a construction to the agreement, or to the maritime usage, as would justify the course pursued by the Boston. The meaning of the contract and the maritime usage upon the subject, are precisely the same, that is to say, if two boats are meeting each other, each shall veer to the right to avoid collision; but when the course of the Fredericksburg was making a considerable angle with the line on which the Boston was at first proceeding, and which was, moreover, the ordinary and proper course of the Boston, and when, from the direction the Fredericksburg was steering, she was every moment increasing her distance from the path in which the Boston was expected to pass, there is no maritime usage, and no reasonable construction of the contract mentioned in the testimony, that can excuse the commander of the Boston from deviating six or seven points from his usual and proper course, and going two miles out of his way, in order to cross the bow of the Fredericksburg, and pass her on her larboard side; the more especially, as every change of course most obviously and necessarily increased the danger of coming into collision. I think the conduct of the Boston in this matter to be altogether inexcusable.

4. But what appears to me to remove all doubt upon the question of who was in fault, is the want of the signal-light on board the Boston, which the law requires to be carried from sunset to sunrise. This light, on board the Fredericksburg, was in proper order and in its proper place; but on board the Boston, at the moment the Fredericksburg came in sight, it was found to be flickering only, or nearly out, and was immediately taken away, and was not replaced during the whole time the boats were nearing one another, nor until after the collision had actually taken place. It is true, that another light, said to have been a strong one, was burning under the upper deck near the machinery, it is stated in the testimony, might have been seen on board the Fredericksburg; but this was not the signal-light prescribed by law, which, by universal usage, is placed in an elevated position at the head of the vessel; and in this position the Boston herself was accustomed to bear it.

Experienced commanders of steamboats have testified, that the light thus placed enables you to determine not only the place of the boat but the course she is steering. But however that may be, the duty is enjoined by law; and the omission of a known legal duty is such strong evidence of negligence and carelessness, that, in every case of collision happening under such circumstances, I should hold the offending vessel as altogether in fault, unless clear and indisputable evidence established the contrary. Certainly, in this case, no such evidence has been offered in behalf of the Boston, as can vindicate her from the presumptions of carelessness and negligence, which justly arise from her disregard of a legal duty, and that, too, at a time when the boats were approaching one another, and the signal-light particularly important.

Upon these considerations, I am decidedly of opinion, that the entire fault was on the part of the Boston, and that she is justly chargeable with the damage done to the boat of the libellants.

The remaining question is, upon the amount of damage, and upon this point there is nearly as much contrariety in the statements of the witnesses, as there was upon the point already disposed of. The witnesses, too, are all skilful workmen, respectable citizens, and of undoubted integrity and truth. The greater number of them estimate the damage far below the amount awarded by the district court. But when all are trustworthy, it is not by the number that the court must be governed, but rather by the means of knowledge they respectively possessed, and their previous knowledge of the boat; the time when the examination was made, and the manner of it, also, must be chiefly regarded. For, it is evident, that a single witness who made the examination soon after the disaster happened, when the marks of the injury were yet fresh, who made his examination in detail, and by items estimating the cost of repairing each particular injury, and who had had opportunities of being well acquainted with the previous condition of the boat, is more to be relied on than the testimony of many witnesses who had made only general examinations and general estimates, and that, too, long after the injury was received, and when she had been lying for months dismantled and exposed to the weather. And in this view of the subject, I adopt the estimate of Mr. Brown, who is admitted on all hands to be a man of undoubted skill and unquestionable character, and who had the best opportunity of knowing the condition of the boat previously to the collision, who examined her immediately after the injury was done; whose examination was made in detail, with separate estimates of the cost of repairing the several specific injuries which the vessel had sustained, and with those in-

juries immediately before him when he made his estimates. The estimates of Mr. Brown were adopted by the district court; and, I think, rightly adopted.

So far I have treated this case as if it were a new one, coming as an original cause before this court, without any previous examination or decision. But this is not the point of view in which the court regards it; it is an appeal from the district court; and the judgment of that court is to be regarded as correct, unless the appellant can show it to be erroneous; the burden of proof is upon him. In a case like this, which is purely a question of fact, depending upon the testimony of a multitude of witnesses, whose statements are often inconsistent with each other in material and essential particulars, and whose relative title to credibility is to be carefully weighed and scrutinized, nothing less than the firmest and clearest conviction that the district court had fallen into error, could justify this court in reversing its judgment; and the more especially when, as in this case, it appears from the written opinion filed by the judge, that the whole case was most carefully and elaborately considered and decided in that court.

It is true, that some new testimony has been offered here, which was not given in the district court. But new testimony introduced into an appellate court, in admiralty proceedings, is always listened to with great caution, and is never, except under peculiar circumstances, entitled to the same consideration as testimony which had been given in the district court; as it is always liable to the imputation of having been sought for in order to meet the new condition of the controversy, arising from the decree of the district court, and is, moreover, calculated to take the opposite party by surprise, in the court of last resort. But I do not perceive that the new testimony, in any view, is entitled to much weight, or can materially change the aspect of the case, as it was presented to the district court; for, as to the two new witnesses, who testified concerning the collision, and were particularly referred to in the argument, Captain Brown saw nothing, until after the collision had actually taken place, and the vessels were endeavoring to disengage themselves from each other, and then his stay upon deck was only for a few minutes; and according to his own account, even while there, he took very little interest in the matter, and bestowed upon it but little attention; and as relates to Mr. Allison, he was on board of his own vessel, lying under, Shesutie Island, about two miles distant from the place of collision, and, of course, very little able to determine on the course and management of the boats, as they approached one another, especially as one of them had no bow-light. The notion which he seemed to entertain, that the Fredericksburg was pursuing the Boston, and changing her course in order to meet her, is inconsistent with the weight of testimony hereinbefore considered, and inconsistent, too, with the strongest motives which, in ordinary cases, govern human actions; for the Fredericksburg being so much smaller and weaker than the Boston, it can hardly be believed, that it sought a collision, which must inevitably end in disaster to their boat, and put in jeopardy the lives of those on board.

As respects the new testimony in relation to the amount of damage, I have already expressed my opinion upon it, and of the degree of weight to which it is entitled in comparison with that of Mr. Brown; that these same witnesses were not examined in the district court, and if the testimony was regarded as material at that time, it was in the power of the appellant to have brought it forward. It must be a very strong case, and the omission to examine must appear to have arisen from some sufficient and peculiar circumstance, before the circuit court would reverse an assessment of damages made by the district court, where both parties consented to try the question upon the testimony then offered, without producing other testimony then in their power. Upon the whole, I see no ground upon which to question the correctness of the decree of the district court; and affirm its decree, with costs.